IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRYAN FLETCHER and GARRETT FLETCHER,<br><br>      Plaintiffs,<br><br>v.<br><br>THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A",<br><br>      Defendants. | Case No. 23-cv-04324 |

**COMPLAINT**

Bryan Fletcher and Garrett Fletcher (together, "Plaintiff") hereby bring the present action against the Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, "Defendants") and allege as follows:

**I. JURISDICTION AND VENUE**

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Copyright Act 17 U.S.C. § 501, *et seq.*, 28 U.S.C. § 1338(a), and 28 U.S.C. § 1331.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at least the fully interactive e-commerce stores[1] operating under the seller aliases identified in Schedule A attached hereto (the "Seller Aliases"). Specifically, Defendants have targeted sales to

---

[1] The e-commerce store URLs are listed on Schedule A hereto under the Online Marketplaces.

Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and/or funds from U.S. bank accounts and, on information and belief, have sold products that are unauthorized copies of the federally registered Rainbow Friends copyrighted works (the "Unauthorized Rainbow Friends Products") to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Illinois.

## II. INTRODUCTION

3. This action has been filed by Plaintiff to combat e-commerce store operators who trade upon Plaintiff's reputation and goodwill by selling and/or offering for sale Unauthorized Rainbow Friends Products. Defendants create e-commerce stores operating under one or more Seller Aliases that are advertising, offering for sale, and selling Unauthorized Rainbow Friends Products to unknowing consumers. E-commerce stores operating under the Seller Aliases share unique identifiers, establishing a logical relationship between them and that Defendants' unlawful operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope and interworking of their operation. Plaintiff is forced to file this action to combat Defendants' infringement of the registered Rainbow Friends copyrighted works, as well as to protect unknowing consumers from purchasing Unauthorized Rainbow Friends Products over the Internet. Plaintiff has been and continues to be irreparably damaged through the infringement of the registered Rainbow Friends copyrighted works as a result of Defendants' actions and seeks injunctive and monetary relief.

## III. THE PARTIES

**Plaintiff**

4. Plaintiff Bryan Fletcher is an individual who resides in the State of Alabama. Plaintiff Garrett Fletcher is an individual who resides in the State of Idaho.

5. Long before Defendants' acts described herein, Plaintiff created the Rainbow Friends online video game in 2021. When it launched, Rainbow Friends immediately became an enormously successful online video game experience and a global phenomenon. Rainbow Friends is carried exclusively on www.roblox.com ("Roblox"),[2] a premier online gaming platform.

6. Out of more than 29 million games that are live on the Roblox platform since its launch, Rainbow Friends has consistently performed as a top-twenty game.[3] Rainbow Friends is played each day by gamers from 180 countries around the world, including the United States.

7. The Rainbow Friends video game has gained wide exposure on platforms such as YouTube and Twitch. For example, playthrough videos of Chapter 1 of Rainbow Friends have received millions of views on YouTube.

8. Rainbow Friends is a survival horror game that involves an unnamed protagonist who is kidnapped during a school trip to an amusement park. The player must solve puzzles and complete tasks in order to progress further, all while avoiding the game's main antagonist, Blue, a large humanoid figure. Blue and other characters associated with the game have gained significant

---

[2] Over the past two decades, Roblox, now a $22 billion company, has developed one of the top online platforms for games and other experiences. The success of Roblox's platform is based on its innovative, groundbreaking technology and content that Roblox provides to its users and developers for use on the platform. As of the three (3) months ending on September 30, 2022, there were, daily, 58.8 million active users and 13.4 billion engagement hours. Roblox users include half of children under 16 in the United States who come to Roblox to play, learn, explore, and expand their relationships in 3D digital simulations like Rainbow Friends.

[3] Its top-twenty ranking is based on player popularity and earning results.

popularity and are invaluable assets of Plaintiff. Some of the Rainbow Friends characters are displayed in the following chart:

| | |
|---|---|
| Blue | |
| Green | |
| The Scientist | |

| Orange | |
| --- | --- |
| Pink | |
| Purple | |

9. In addition to the popular video game, a variety of authorized products are available, including apparel, household items such as bathroom products and bedding, stationery, stickers, phone cases, tote bags and backpacks (collectively, the "Rainbow Friends Products"). Rainbow Friends Products typically include at least one of the registered Rainbow Friends copyrighted works.

10. Rainbow Friends Products are distributed and sold to consumers through authorized retailers in the United States, including retailers in Illinois. Genuine Rainbow Friends Products are sold only through authorized retail channels and are recognized by the public as being exclusively associated with Plaintiff's Rainbow Friends game and brand.

11. Plaintiff has registered its Rainbow Friends copyrighted works (the "Rainbow Friends Copyrighted Works") under U.S. Copyright Registration No. PA 2-377-605, issued by the Register of Copyrights on October 31, 2022. A true and correct copy of the U.S. federal copyright registration certificate for the Rainbow Friends Copyrighted Works is attached hereto as **Exhibit 1**.

12. Among the exclusive rights granted to Plaintiff under the U.S. Copyright Act are the exclusive rights to reproduce, prepare derivative works of, distribute copies of, and display the Rainbow Friends Copyrighted Works to the public.

13. Since their first publication, the Rainbow Friends Copyrighted Works have been continuously used in Plaintiff's video game and are featured on Roblox and other platforms such as YouTube.

**The Defendants**

14. Defendants are individuals and business entities of unknown makeup who own and/or operate one or more of the e-commerce stores under at least the Seller Aliases identified on

Schedule A and/or other seller aliases not yet known to Plaintiff. On information and belief, Defendants reside and/or operate in the People's Republic of China or other foreign jurisdictions with lax intellectual property enforcement systems or redistribute products from the same or similar sources in those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

15. On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto. Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Plaintiff to learn Defendants' true identities and the exact interworking of their network. If Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

### IV. DEFENDANTS' UNLAWFUL CONDUCT

16. The success of the Rainbow Friends video game and brand has resulted in significant copying of the Rainbow Friends Copyrighted Works. Consequently, Plaintiff regularly investigates suspicious e-commerce stores identified in proactive Internet sweeps and reported by consumers. Plaintiff has identified numerous fully interactive e-commerce stores offering Unauthorized Rainbow Friends Products on online marketplace platforms such as Amazon, eBay, AliExpress, Alibaba, Wish.com, Walmart, Etsy, and DHgate, including the e-commerce stores operating under the Seller Aliases. The Seller Aliases target consumers in this Judicial District and throughout the United States. According to a U.S. Customs and Border Protection (CBP) report, in 2021, CBP made over 27,000 seizures of goods with intellectual property rights (IPR) violations totaling over $3.3 billion, an increase of $2.0 billion from 2020. *Intellectual Property Rights Seizure Statistics, Fiscal Year 2021*, U.S. Customs and Border Protection (**Exhibit 2**). Of the

27,000 in total IPR seizures, over 24,000 came through international mail and express courier services (as opposed to containers), most of which originated from China and Hong Kong. *Id*.

17. Third party service providers like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing infringers to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms." **Exhibit 3**, Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. 157, 186 (2020); *see also* report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020), attached as **Exhibit 4**, and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary. Infringers hedge against the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual store-fronts. **Exhibit 4** at p. 22. Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, infringers can have many different profiles that can appear unrelated even though they are commonly owned and operated. **Exhibit 4** at p. 39. Further, "E-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters." **Exhibit 3** at 186–187.

18. Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and/or funds from U.S. bank accounts, and, on information and belief, have sold Unauthorized Rainbow Friends Products to residents of Illinois.

19. Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies. For example, Defendants facilitate sales by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars and/or funds from U.S. bank accounts via credit cards, Alipay, Amazon Pay, and/or PayPal. E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer. Plaintiff has not licensed or authorized Defendants to copy and/or distribute the Rainbow Friends Copyrighted Works, and none of the Defendants are authorized retailers of genuine Rainbow Friends Products.

20. E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading, and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

21. E-commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Unauthorized Rainbow Friends Products. Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal their identities and the full scope and interworking of their operation, and to avoid being shut down.

22. Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating under the Seller Aliases often share unique identifiers, such as templates with common design elements that intentionally omit any contact information or other information for identifying Defendants or other Seller Aliases they operate or use. E-commerce stores operating

under the Seller Aliases include other notable common features such as use of the same registration patterns, accepted payment methods, check-out methods, keywords, advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and images. Additionally, Unauthorized Rainbow Friends Products for sale by the Seller Aliases bear similar irregularities and indicia of being unauthorized to one another, suggesting that the Unauthorized Rainbow Friends Products were manufactured by and come from a common source and that Defendants are interrelated.

23. E-commerce store operators like Defendants are in constant communication with each other and regularly participate in QQ.com chat rooms and through websites such as sellerdefense.cn and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

24. Infringers such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation despite Plaintiff's enforcement. E-commerce store operators like Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to offshore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Plaintiff. Indeed, analysis of financial transaction logs from previous similar cases indicates that off-shore infringers regularly move funds from U.S.-based financial accounts to offshore accounts outside the jurisdiction of this Court.

25. Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Unauthorized Rainbow Friends Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Plaintiff, have jointly and severally, knowingly and willfully used and continue to use unauthorized copies of the Rainbow Friends Copyrighted Works in connection

with the advertisement, distribution, offering for sale, and sale of Unauthorized Rainbow Friends Products into the United States and Illinois over the Internet.

26. Defendants' copying and use of the Rainbow Friends Copyrighted Works in connection with the advertising, distribution, offering for sale, and sale of Unauthorized Rainbow Friends Products, including the sale of Unauthorized Rainbow Friends Products into the United States, including Illinois, infringes and continues to infringe the Rainbow Friends Copyrighted Works and is irreparably harming Plaintiff.

**COUNT I**
**COPYRIGHT INFRINGEMENT OF UNITED STATES COPYRIGHT REGISTRATION**
**(17 U.S.C. §§ 106 AND 501)**

27. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

28. The Rainbow Friends Copyrighted Works constitute original works and are copyrightable subject matter pursuant to the Copyright Act, 17 U.S.C. §§ 101, *et seq*.

29. Plaintiff is the owner of the Rainbow Friends Copyrighted Works. Plaintiff has complied with the registration requirements of 17 U.S.C. § 411(a) for the Rainbow Friends Copyrighted Works. The Rainbow Friends Copyrighted Works are protected by Copyright Registration No. PA 2-377-605, which was duly issued to Plaintiff by the United States Copyright Office. At all relevant times, Plaintiff has been and still is the owner of all rights, title, and interest in the Rainbow Friends Copyrighted Works, which have never been assigned, licensed, or otherwise transferred to Defendants.

30. The Rainbow Friends Copyrighted Works are published on the Internet and are available to Defendants online. As such, Defendants had access to the Rainbow Friends Copyrighted Works via the Internet.

31. Without authorization from Plaintiff, or any right under the law, Defendants have deliberately copied, displayed, distributed, reproduced, and/or made derivate works incorporating the Rainbow Friends Copyrighted Works on e-commerce stores operating under the Seller Aliases and the corresponding Unauthorized Rainbow Friends Products. Defendants' derivative works are virtually identical to and/or are substantially similar to the look and feel of the Rainbow Friends Copyrighted Works. Such conduct infringes and continues to infringe the Rainbow Friends Copyrighted Works in violation of 17 U.S.C. § 501(a) and 17 U.S.C. §§ 106(1) – (3), (5).

32. Defendants reap the benefits of the unauthorized copying and distribution of the Rainbow Friends Copyrighted Works in the form of revenue and other profits that are driven by the sale of Unauthorized Rainbow Friends Products.

33. Defendants have unlawfully appropriated Plaintiff's protectable expression by taking material of substance and value and creating Unauthorized Rainbow Friends Products that capture the total concept and feel of the Rainbow Friends Copyrighted Works.

34. On information and belief, Defendants' infringement has been willful, intentional, and purposeful, and in disregard of and with indifference to, Plaintiff's rights.

35. Defendants, by their actions, have damaged Plaintiff in an amount to be determined at trial.

36. Defendants' conduct is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiff great and irreparable injury that cannot be fully compensated or measured in money. Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiff is entitled to a preliminary and permanent injunction prohibiting further infringement of the Rainbow Friends Copyrighted Works.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

    a. reproducing, distributing copies of, making derivative works of, or publicly displaying the Rainbow Friends Copyrighted Works in any manner without the express authorization of Plaintiff;

    b. passing off, inducing, or enabling others to sell or pass off any product as a genuine Rainbow Friends Product or any other product produced by Plaintiff, that is not Plaintiff's or not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale bearing the Rainbow Friends Copyrighted Works;

    c. committing any acts calculated to cause consumers to believe that Defendants' Unauthorized Rainbow Friends Products are those sold under the authorization, control or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

    d. further infringing the Rainbow Friends Copyrighted Works and damaging Plaintiff's goodwill; and

    e. manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which bear the Rainbow Friends Copyrighted Works;

2) Entry of an Order that, upon Plaintiff's request, those with notice of the injunction, including, without limitation, any online marketplace platforms such as eBay, AliExpress, Alibaba, Amazon, Wish.com, Walmart, Etsy, and DHgate (collectively, the "Third Party Providers") shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of infringing goods which bear the Rainbow Friends Copyrighted Works;

3) As a direct and proximate result of Defendants' infringement of the Rainbow Friends Copyrighted Works, Plaintiff is entitled to damages as well as Defendants' profits, pursuant to 17 U.S.C. § 504(b);

4) Alternatively, and at Plaintiff's election prior to any final judgment being entered, Plaintiff is entitled to the maximum amount of statutory damages provided by law, $150,000 per work infringed pursuant to 17 U.S.C. § 504(c), or for any other such amount as may be proper pursuant to 17 U.S.C. § 504(c);

5) Plaintiff is further entitled to recover its attorneys' fees and full costs for bringing this action pursuant to 7 U.S.C. § 505 and 17 U.S.C. § 1117(a); and

6) Award any and all other relief that this Court deems just and proper.

| | |
|---|---|
| Dated this 6th day of July 2023. | Respectfully submitted, |

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Justin T. Joseph
Trevor C. Talhami
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080
312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
jjoseph@gbc.law
ttalhami@gbc.law

*Counsel for Plaintiffs*
*Bryan Fletcher and Garrett Fletcher*